Filed 1/22/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MTC FINANCIAL, INC., <br>    Plaintiff, <br>v. <br>NATIONSTAR MORTGAGE, <br>    Defendant and Appellant; <br>PAN SPARROW et al., <br>    Defendants and Respondents. | A150916 <br><br>(Contra Costa County <br>Super. Ct. No. MSN16-1814) |

Defendant Nationstar Mortgage LLC (Nationstar) appeals an order denying its claim to surplus funds deposited with the court by plaintiff MTC Financial, Inc., doing business as Trustee Corps (trustee), after the trustee's nonjudicial foreclosure sale of real property on which two deeds of trust were filed for recording simultaneously and indexed sequentially. Nationstar contends the court erred in concluding that although its deed of trust was indexed after the other deed of trust, it was the senior lienholder and under Civil Code section 2924k was not entitled to any of the sale proceeds. We conclude the trial court properly determined the relative priorities and, thus, shall affirm the court's distribution order.

**Factual and Procedural Background**

In 2003, Pan Sparrow obtained two loans from Countrywide Home Loans, Inc. (Countrywide), each secured by a deed of trust on certain real property located in Hercules, California. One loan was a single family mortgage (mortgage) in the principal amount of $205,080 and the other loan was a home equity line of credit (HELOC or equity line) in the principal amount of $15,000. Both deeds of trust were recorded with

the Contra Costa County Recorder's Office on December 16, 2003. The deed of trust for the equity line received a recorder's instrument number of 2003-0603657, and the deed of trust for the mortgage received a recorder's instrument number of 2003-0603058. Through a series of transfers, the equity line subsequently was assigned to the Bank of New York Mellon and the mortgage was assigned to Nationstar.

Following Sparrow's default on the equity line, the trustee conducted a nonjudicial trustee sale of the property. The trustee received $105,000 from the sale. After payment of all funds due the Bank of New York Mellon and the fees and costs of the sale, a surplus of $73,085.50 remained.

Three parties claimed entitlement to the surplus: Sparrow, the Wildwood At Village Park Owners' Association (homeowners association), and Nationstar. The trustee deposited the surplus funds with the court and commenced the present action to resolve the conflict between the three claimants. The trustee explained, "In 2002, homeowner Sparrow borrowed $173,000 from Countrywide. On 12/6/03, Sparrow and Countrywide used an escrow and title insurance for a refinance. What should have happened is that the $173,000 would have been reconveyed, a new first of $205,080 recorded, with a $15,000 HELOC. [¶] Instead, . . . the $15,000 HELOC was recorded prior to the deed of trust for $205,080. It appears no one tendered the claim to [the title insurance company] and its does not appear the lender and its successors ever looked at title. . . . The documents do not say they are a first or a second, but it is obvious. Note that both deeds of trust were recorded at 8:00 am, which is an effective date and time. [¶] If these were from two different lenders, the two deeds of trust would have equal priority — First Bank vs. East West Bank, 199 Cal.App.4th 1309 (2011). However, because the same lender was involved, the HELOC should be treated as a second, not a first."

Following briefing and a hearing, the court ordered $13,572.79 distributed to the homeowners association and the balance distributed to Sparrow. The court determined that Nationstar, as a senior lienholder, was not entitled to any of the proceeds of the sale. Nationstar timely filed a notice of appeal.

**Discussion**

Under Civil Code section 2924k, subdivision (a) the proceeds of a trustee's sale must be distributed in the following order of priority: "(1) To the costs and expenses of exercising the power of sale and of sale . . . . [¶] (2) To the payment of the obligations secured by the deed of trust or mortgage which is the subject of the trustee's sale. [¶] (3) To satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority. [¶] (4) To the trustor or the trustor's successor in interest." When a junior lienholder forecloses on a second deed of trust at a nonjudicial trustee's sale, the senior lienholder is not entitled to any proceeds from the sale because the property is purchased at the sale subject to the first deed of trust. (*Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1614; *Ostayan v. Serrano Reconveyance Co*. (2000) 77 Cal.App.4th 1411, 1422.) Having found that Nationstar was the senior lienholder with respect to the property, the court denied its claim for the surplus proceeds of the sale.

California has adopted a "first in time, first in right" system of lien priorities, under which, as a general rule, liens "have relative priorities among themselves according to the time of their creation." (5 Miller & Starr, Cal. Real Estate (3d ed. 2009) Recording and Priorities, § 11:1, p. 11-11; see also Civ. Code, § 2897 ["Other things being equal, different liens upon the same property have priority according to the time of their creation."].) Because the deeds of trust in this case were both signed on December 5, 2003, "the time of their creation" does not determine their priority.

The date of recording also is not determinative in this instance. Generally, liens that are recorded earlier take priority over subsequently recorded liens. (Civ. Code, § 1214.) "An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the Recorder's office, with the proper officer, for record." (Civ. Code, § 1170.) Here, both deeds of trust were deposited in the recorder's office at 8:00 a.m. on December 16, 2003.

As Nationstar emphasizes, the deed of trust on the equity line was assigned instrument number 2003-0603657 and the deed of trust on the mortgage was assigned

instrument number 2003-0603658. Courts have consistently held, however, that if two deeds of trust are submitted at the same time for recording, the order in which they are indexed is not determinative of priority. (*Phelps v. American Mortgage Co.* (1936) 6 Cal.2d 604, 609, overruled in part on other grounds by *Firato v. Tuttle* (1957) 48 Cal.2d 136, 138-139; *First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1313.)

In *Phelps v. American Mortgage Co., supra*, 6 Cal.2d 604, two trust deeds on the same property, one securing payment of a promissory note in the amount of $125,000 and the other securing payment of a $60,000 promissory note, were executed on the same day and presented for recordation the next day. (*Id.* at p. 605.) Although the $125,000 trust deed was intended to be the first lien trust deed, as that deed of trust recited, it was indexed by the county recorder's office with a higher number and presumably in a junior position to the $60,000 trust deed that was intended to be the second lien trust deed. (*Id.* at p. 606.) The Supreme Court rejected the trial court's finding that the $60,000 deed of trust was senior to the $125,000 deed of trust based on the sequence in which the two documents were indexed. (*Id.* at p. 608.) The court explained that if the deeds of trust "were filed at the same time or in their proper order and the reverse order of recordation was an inadvertence, that mistake . . . should not be permitted to alter the intended relations of the parties . . . when an examination of the recorded documents would provide notice of the true priorities." (*Id.* at p. 609.)

In *First Bank v. East West Bank*, *supra*, 199 Cal.App.4th at page 1311, two banks granted loans to an individual and secured them with the same real property by means of trust deeds signed on the same date. Both lenders delivered their trust deeds to the recorder's office before business hours on the same date and the recorder time-stamped both trust deeds at 8:00 a.m. that day. (*Id.* at p. 1312.) Later that morning the recorder indexed defendant bank's recorded trust deed first; plaintiff bank's recorded trust deed was indexed later that afternoon. (*Ibid.*) In a declaratory relief action seeking a determination of which lien had priority, both parties moved for summary judgment. (*Ibid.*) The trial court held that the trust deeds were recorded concurrently and neither bank was a subsequent encumbrancer, with the result that the liens had equal priority.

4

(*Ibid*.) The Court of Appeal affirmed, holding that "because both trust deeds were executed on the same day and are deemed recorded simultaneously, neither bank is a subsequent [encumbrancer]." (*Id*. at p. 1315.) The court explained that it "would disrupt the statutory scheme to make priority turn on the random act of indexing, as defendant advocates, especially where banks and title insurers have no influence over when the recorder indexes trust deeds." (*Id*. at p. 1317.) [1]

Absent evidence of timing that was determinative, the trial court here reasonably relied on the apparent intent of the parties to determine the priority of the two liens. (See Civ. Code, § 2897 [system of first in time applies only if "[o]ther things being equal."].) Given that Countrywide was the lender on both loans, the reasonable expectation is that it would secure the much larger mortgage loan in the primary position. The trustee's observation that the intended priority between the mortgage and the equity line was "obvious" confirms this conclusion. This understanding is further supported by reference to the usual understanding of the relationship between a mortgage and an equity line of credit. (Pridgen & Alderman, Consumer Credit and the Law (Nov. 2017) § 9:19 ["The home equity open end line of credit, also called a HELOC, . . . allows the consumer to access often quite large credit lines that are secured by the existing equity in the home (i.e., the difference between current market value and current indebtedness)."]; The Federal Reserve Board, *What you should know about home Equity lines of Credit*, pp. 3, 8 <http://files.consumerfinance.gov/f/201204_CFPB_HELOC-brochure.pdf> [as of Jan. 22, 2018] [explaining that amount of equity line is determined by subtracting balance

___

[1] Nationstar's reliance on *Cady v. Purser* (1901) 131 Cal. 552 for the proposition that the indexing of the deeds of trust determines priority is misplaced. That case merely held that constructive notice of an interest in property requires both the recording and proper indexing of an instrument. (*Id*. at p. 557.) As the court in *First Bank v. East West Bank*, *supra*, 199 Cal.App.4th at page 1318 explained, *Cady v. Purser* "did not involve the question of determining priority of liens among concurrent purchasers. [It] concerned the impact on subsequent purchasers of improperly indexed instruments that did not impart notice."

owed on mortgage from appraised value of property and comparing equity lines to "traditional second mortgage loans"].)

Contrary to Nationstar's argument, this conclusion does not result in a windfall to Sparrow or cause it to suffer injury, because it presumably retains its secured lien on the property. Nationstar suggests that it has no recourse against the party who purchased the property in the trustee's sale. It argues "title to the subject property passed to a bona fide purchaser at the trustee's sale, who took title without any notice or knowledge that Nationstar would be 'deemed' to be senior after the foreclosure." The assumption that the purchaser had no notice of the senior mortgage is not supported by the record. The guarantee issued by the title company in connection with the trustee's sale specifically advises potential buyers that "title to the estate or interest is subject to . . . liens or encumbrances shown in schedule B which are not necessarily shown in the order of their priority." Schedule B identifies four specific liens: The 2002 Countrywide deed of trust for $173,060 recorded on August 13, 2002, the deed of trust held by the Bank of New York Mellon recorded on December 16, 2003, the deed of trust held by Nationstar recorded on December 16, 2003, and a lien on the property by the City of Hercules recorded on February 25, 2015. The purchaser was on notice of the other liens and could have taken steps to determine their priority. Moreover, the relative amounts of the loans secured by the two deeds of trust and the fact that they were recorded simultaneously arguably should also have put the purchaser on notice of the need to determine the relative priority of the deeds of trust before purchasing the property. The purchaser is not a party to these proceedings so that the trial court could not and we do not make a ruling regarding the status of his title or any claims or defenses he may have vis-à-vis Nationstar. Had Nationstar feared inconsistent rulings, it could have joined the purchaser in these proceedings but it failed to do so. In all events, Sparrow's receipt of approximately $60,000 on the loss of her property is no windfall to her.[2]

_____

[2] Having rejected Nationstar's claim to the surplus funds, we need not reach its argument that the court erred in granting the claim submitted by the homeowners association.

6

**Disposition**

The order is affirmed. Sparrow shall recover her costs on appeal.

_____

Pollak, J.

We concur:

_____

McGuiness, Acting P.J.*

_____

Jenkins, J.

---

*  Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial court:                              Contra Costa County Superior Court

Trial judge:                              Honorable Steven K. Austin

Council for plaintiff:                    No appearance

Counsel for appellant:                    McCARTHY & HOLTHUS
                                          Melissa Robbins Coutts

Counsel for respondents:                  MOSS & MURPHY
                                          Glen L. Moss

                                          SWEDELSON GOTTLIEB
                                          Joan Lewis-Heard

A150916